LEININGER, APPELLEE, *v*. PIONEER NATIONAL LATEX ET AL., APPELLANTS.

[Cite as *Leininger v. Pioneer Natl. Latex,*
115 Ohio St.3d 311, 2007-Ohio-4921.]

(No. 2006-1304—Submitted April 18, 2007—Decided September 27, 2007.)

LANZINGER, J.

{¶ 1} In this case, we accepted a discretionary appeal to determine whether a common-law tort claim exists for wrongful discharge based on the public policy against age discrimination expressed in R.C. Chapter 4112. In light of the full range of remedies provided in R.C. Chapter 4112, we hold that there is no such public policy tort.

Background

{¶ 2} Appellee, Marlene Leininger, filed a complaint against appellants, Pioneer National Latex, Jerry Meyer, and Melissa McCormic, alleging a single cause of action for wrongful termination of her employment in violation of Ohio's public policy against age discrimination as found in R.C. 4112.02(A). In May 2001, Leininger was fired at the age of 60, after having been employed as a human resources administrator with Pioneer and its predecessor for 19 years. Meyer, Leininger's immediate supervisor, participated in the decision to discharge her.

McCormic was the 21–year–old to whom some of Leininger's job duties were assigned.

{¶ 3} Appellants filed a motion for summary judgment asserting that Leininger had filed her action beyond the statute of limitations for R.C. 4112.02 and that she could not establish a common-law cause of action for wrongful discharge, because statutory remedies exist that provide her with the possibility of complete relief. The trial court granted the motion and dismissed the complaint.

{¶ 4} The Fifth District Court of Appeals reversed the trial court's judgment, relying on *Livingston v. Hillside Rehab. Hosp.* (1997), 79 Ohio St.3d 249, 680 N.E.2d 1220, a case in which, on the authority of *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 677 N.E.2d 308, we reversed, without opinion, an appellate judgment that had refused to allow an age-based common-law claim for wrongful discharge. Although recognizing that later, in *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, we questioned the need to recognize a common-law action for wrongful discharge when a statutory remedy adequately protected society's interests, the Fifth District concluded that Leininger could maintain her claim. It reasoned that *Wiles* has not been applied to wrongful discharge claims based on R.C. Chapter 4112 and that *Wiles* did not expressly overrule *Livingston*.

{¶ 5} Appellants argue against recognition of a public policy tort for wrongful discharge based on age discrimination, because the remedies provided in R.C. Chapter 4112 sufficiently protect the public's interest. Leininger responds that a common-law claim based on public policy would offer broader protection than the statutes and that plaintiffs such as she will not be fully vindicated if they are forced to rely on the limited remedies of R.C. 4112.14.

## Common–Law Claim Based on Public Policy

{¶ 6} The common-law doctrine of employment at will generally governs employment relationships in Ohio. *Wiles*, 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, ¶ 5. We have described this relationship as one in which "the employee agrees to perform work under the direction and control of the employer, and the employer agrees to pay the employee at an agreed rate. Moreover, either an employer or an employee in a pure at-will employment relationship may legally terminate the employment relationship at any time and for any reason. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 103, 19 OBR 261, 483 N.E.2d 150." *Lake Land Emp. Group of Akron, LLC v. Columber*, 101 Ohio St.3d 242, 2004-Ohio-786, 804 N.E.2d 27, ¶ 17.

{¶ 7} A public policy exception to the employment-at-will doctrine was first recognized by this court in *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981. Greeley's employment was terminated

because he was subject to a court's wage-withholding order. Although R.C. 3113.213(D) clearly prohibited the employer's action, that statute provided only for the employer to be fined for a violation and did not grant the employee any civil remedies. This court held that "[p]ublic policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." Id. at paragraph one of the syllabus.

{¶ 8} Later, *Greeley* was extended, and claims for wrongful discharge were allowed for employment terminations that violated public policy as expressed in sources other than the Revised Code. " 'Clear public policy' sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law." *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus.[1] *Painter* also suggested the following elements for the tort of wrongful discharge in violation of public policy:

{¶ 9} " '1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

{¶ 10} " '2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

{¶ 11} " '3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

{¶ 12} " '4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).' " Id. at 384, 639 N.E.2d 51, fn. 8, quoting H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398–399.

{¶ 13} We expressly adopted this analysis in *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653, which also established that the clarity and jeopardy elements are questions of law to be determined by the court. Id. at 70, 652 N.E.2d 653.

{¶ 14} Instead of analyzing these elements, the Fifth District noted that some courts have interpreted *Livingston*, 79 Ohio St.3d 249, 680 N.E.2d 1220, to allow

---

1. This court had twice before *Painter* declined to extend *Greeley*. See *Tulloh v. Goodyear Atomic Corp.* (1992), 62 Ohio St.3d 541, 584 N.E.2d 729, syllabus ("Absent statutory authority, there is no common-law basis in tort for a wrongful discharge claim"), overruled by *Painter*; *Provens v. Stark Cty. Bd. of Mental Retardation & Dev. Disabilities* (1992), 64 Ohio St.3d 252, 594 N.E.2d 959 (public employees do not have a private cause of action against employer for policies embodied in the Ohio Constitution when there are other satisfactory statutory and administrative remedies).

public policy claims for wrongful discharge based on age discrimination. See, also, *Gessner v. Union*, 159 Ohio App.3d 43, 2004-Ohio-5770, 823 N.E.2d 1, ¶ 20. Nevertheless, when Livingston's cause of action arose, a different statutory scheme existed. Livingston's public policy claim was based solely on an alleged violation of former R.C. 4101.17(A);[2] consequently, civil remedies under R.C. 4112.99 were not available to her. Later, however, former R.C. 4101.17 was incorporated into R.C. Chapter 4112 and renumbered R.C. 4112.14. Am.S.B. 162, 146 Ohio Laws, Part V, 9163, 9627. Now, remedies are available to plaintiffs such as Leininger, pursuant to R.C. 4112.99, that were not available to Livingston.

{¶ 15} Having determined that *Livingston* does not control, we will now address the two elements of a common-law claim based on public policy that present questions of law.

### The Clarity Element

{¶ 16} As previously noted, in a common-law claim for wrongful discharge, a plaintiff must prove the clarity element by showing that a clear public policy is manifested in the state or federal constitutions, or in a statute, an administrative regulation, or the common law. Here, the parties do not dispute that Ohio has a clear public policy against age discrimination in the employment setting.[3] R.C. 4112.02(A) states:

---

2. {¶ a} Former R.C. 4101.17 provided:

{¶ b} "(A) No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.

{¶ c} "(B) Any person aged forty or older who is discriminated against in any job opening or discharged without just cause by an employer in violation of division (A) of this section may institute a civil action against the employer in a court of competent jurisdiction. If the court finds that an employer has discriminated on the basis of age, the court shall order an appropriate remedy which shall include reimbursement to him for the costs, including reasonable attorney fees, of the action, or to reinstate the employee in his former position with compensation for lost wages and any lost fringe benefits from the date of the illegal discharge and to reimburse him for the costs, including reasonable attorney fees, of the action. The remedies available under this section are coexistent with remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code; except that any person instituting a civil action under this section is, with respect to the practices complained of, thereby barred from instituting a civil action under division (N) of section 4112.02 of the Revised Code or from filing a charge with the Ohio civil rights commission under section 4112.05 of the Revised Code.

{¶ d} "(C) The cause of action described in division (B) of this section and any remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code shall not be available in the case of discharges where the employee has available to him the opportunity to arbitrate the discharge or where a discharge has been arbitrated and has been found to be for just cause." Am.H.B. 314, 143 Ohio Laws, Part III, 4154.

3. Although appellee contends that a common-law public policy against age discrimination existed prior to R.C. 4112.02's enactment, actions for age discrimination did not exist at common law.

{¶ 17} "It shall be an unlawful discriminatory practice:

{¶ 18} "(A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 19} R.C. 4112.14(A) provides that "[n]o employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." The Age Discrimination in Employment Act of 1967, 81 Stat. 602, as amended, Section 621 et seq., Title 29, U.S.Code, offers similar protection. It prohibits age-based discrimination in employment against persons aged 40 and older. Section 631(a), Title 29, U.S.Code.

{¶ 20} Thus, the clarity element is satisfied.

### The Jeopardy Element

{¶ 21} A plaintiff must also prove the jeopardy element, meaning that without a common-law tort claim for wrongful discharge based on age, Ohio's clear policy against age discrimination would be compromised.

{¶ 22} There is confusion over the proper way to analyze the jeopardy element and "whether the public policy tort should be rejected where the statute expressing the public policy already provides adequate remedies to protect the public interest." *Collins v. Rizkana,* 73 Ohio St.3d at 73, 652 N.E.2d 653.

{¶ 23} In *Greeley,* the statute involved did not provide any private remedies to the employee, and so a claim at common law was recognized. 49 Ohio St.3d 228, 551 N.E.2d 981. In contrast, a common-law claim was not recognized in a case in which the plaintiff had sufficiently broad and inclusive remedies through statutes and regulations governing public employment as well as a collective bargaining agreement with grievance procedures. *Provens v. Stark Cty. Bd. of Mental Retardation & Dev. Disabilities* (1992), 64 Ohio St.3d 252, 594 N.E.2d 959.

{¶ 24} When public policy arises from more than one source, the analysis has been different. In *Collins,* the terminated employee's wrongful discharge claim was based on the public policy against sexual harassment and sex discrimination, and two sources for the public policy were implicated, R.C. Chapters 2907 and

---

*Hoops v. United Tel. Co. of Ohio* (1990), 50 Ohio St.3d 97, 100, 553 N.E.2d 252 (no constitutional right to jury trial under R.C. 4101.17 because claims for age discrimination did not exist at common law).

4112. "In cases of *multiple*-source public policy, the statute containing the right and remedy will not foreclose recognition of the tort on the basis of some other source of public policy, unless it was the legislature's intent in enacting the statute to preempt common-law remedies." (Emphasis sic.) *Collins,* 73 Ohio St.3d at 73, 652 N.E.2d 653. This court cautioned, however, "We do not mean to suggest that where a statute's coverage provisions form an essential part of its public policy, we may extract a policy from the statute and use it to nullify the statute's own coverage provisions." Id. at 74, 652 N.E.2d 653. Collins was precluded from pursuing the remedies available in R.C. Chapter 4112 because her employer did not employ a sufficient number of persons to be covered by the chapter. Id. We declined to decide the issue of whether the availability of statutory remedies should defeat a wrongful discharge claim. Id.

{¶ 25} Like *Collins, Kulch* presented a case in which there were multiple sources indicating a public policy against the type of wrongful termination alleged. *Kulch,* 78 Ohio St.3d 134, 677 N.E.2d 308. The employee in *Kulch* alleged that he had been terminated for filing a complaint with the Occupational Safety and Health Administration. Id. at 135, 677 N.E.2d 308. Both Section 660(c), Title 29, U.S.Code and R.C. 4113.52 were identified as separate and independent sources for the public policy against termination for whistleblowing. Id. at 151, 153, 677 N.E.2d 308. After noting that the federal statute did not provide an employee with a private cause of action against an employer, id. at 151, 677 N.E.2d 308, we determined that the remedies available under R.C. 4113.52 were not adequate to fully compensate an aggrieved employee, id. at 155, 677 N.E.2d 308. We held that in the absence of any language indicating that the General Assembly intended the remedies of R.C. 4113.52 to be exclusive, "the mere existence of statutory remedies in R.C. 4113.52 does not, without more, operate to bar recognition of [a] *Greeley* claim for tortious wrongful discharge in violation of R.C. 4113.52." Id. at 156, 677 N.E.2d 308.

{¶ 26} *Wiles,* however, rejected any interpretation of *Kulch* that would indicate that a statutory remedy that provides less than a full panoply of relief gives rise to a common-law cause of action for wrongful discharge. 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, ¶ 20. In *Wiles,* we determined that allowing a wrongful discharge claim based on the public policy expressed in the Family and Medical Leave Act ("FMLA"), Section 2601 et seq., Title 29, U.S.Code, was unnecessary to vindicate the policy goals of the FMLA. Id. at ¶ 1. The combination of compensatory and equitable remedies, which did not include punitive damages, was determined to be sufficient to ensure that the public policy embodied in the FMLA was not jeopardized. Id. at ¶ 17. We noted that "[a]n analysis of the jeopardy element necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim. * * * Simply put, there is no

need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." Id. at ¶ 15.

{¶ 27} It is clear that when a statutory scheme contains a full array of remedies, the underlying public policy will not be jeopardized if a common-law claim for wrongful discharge is not recognized based on that policy. The parties question what should happen if a statutory scheme offers something less than complete relief. Appellants urge this court to follow *Wiles*, while appellee and her amici curiae advocate reliance on *Kulch*; both *Wiles* and *Kulch* are plurality opinions with regard to the issue pertinent to this case. After considering our prior decisions, we conclude that it is unnecessary to recognize a common-law claim when remedy provisions are an essential part of the statutes upon which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct.

{¶ 28} We must, therefore, examine the extent of the remedies that R.C. Chapter 4112 provides.

### Available Remedies under R.C. Chapter 4112

{¶ 29} There are four separate statutes that provide remedies for age discrimination in R.C. Chapter 4112. First, R.C. 4112.02(N) awards "any legal or equitable relief that will effectuate the individual's rights." Second, upon proof of an unlawful discriminatory practice, R.C. 4112.05(G) provides that the Ohio Civil Rights Commission shall issue "an order requiring the respondent to cease and desist from the unlawful discriminatory practice, requiring the respondent to take any further affirmative or other action that will effectuate the purposes of [R.C. Chapter 4112], including, but not limited to, hiring, reinstatement, or upgrading of employees with or without back pay, * * * and requiring the respondent to report to the commission the manner of compliance." Third, R.C. 4112.14(B) provides that if an employer has discriminated against an employee on the basis of age, the court shall order "an appropriate remedy which shall include reimbursement to the applicant or employee for the costs, including reasonable attorney's fees, of the action, or to reinstate the employee in the employee's former position with compensation for lost wages and any lost fringe benefits from the date of the illegal discharge and to reimburse the employee for the costs, including reasonable attorney's fees, of the action." Fourth, R.C. 4112.99 makes violators of R.C. Chapter 4112 "subject to a civil action for damages, injunctive relief, or any other appropriate relief."

{¶ 30} Thus, both R.C. 4112.02(N) and 4112.99 have broad language regarding the relief available. " 'Damages,' absent a restrictive modifier like 'compensatory,' 'actual,' 'consequential' or 'punitive,' is an inclusive term embracing the panoply of legally recognized pecuniary relief." *Rice v. CertainTeed Corp.* (1999),

84 Ohio St.3d 417, 419, 704 N.E.2d 1217. Similarly, "legal relief" means a remedy available in a court of law, i.e., damages. Even though R.C. 4112.05 and 4112.14 provide more specific forms of relief, the intent is to put the plaintiff in the same position as if the unlawful discriminatory practice had not occurred.

{¶ 31} Leininger maintains that we should consider only the remedies in R.C. 4112.14 because it is a more specific statute regarding age discrimination that prevails over the more general provisions of R.C. 4112.02 and 4112.99.[4] We reject this argument. R.C. 4112.08 requires a liberal construction of R.C. Chapter 4112. Although R.C. 4112.02(N),[5] 4112.08,[6] and 4112.14(B) [7] all require a plaintiff to elect under which statute (R.C. 4112.02, 4112.05, or 4112.14) a claim for age discrimination will be pursued, when an age discrimination claim accrues, a plaintiff may choose from the full spectrum of remedies available. Leininger's argument also does not take into account the scope of R.C. 4112.99's remedies. In *Elek v. Huntington Natl. Bank* (1991), 60 Ohio St.3d 135, 573 N.E.2d 1056, we stated that R.C. 4112.99 provides an independent civil action to seek redress for any form of discrimination identified in the chapter. Id. at 136, 573 N.E.2d 1056. A violation of R.C. 4112.14 (formerly R.C. 4101.17), therefore, can also support a claim for damages, injunctive relief, or any other appropriate relief under R.C. 4112.99. This fourth avenue of relief is not subject to the election of remedies.

---

4. Although R.C. 4112.14 was the only statutory claim available to Leininger at the time she filed her complaint due to the expiration of the statute of limitations for claims under R.C. 4112.02 and 4112.05, this fact does not justify limiting our examination of the available remedies under the chapter as a whole. In determining whether a common-law tort claim for wrongful discharge based on Ohio's public policy against age discrimination should be recognized, we need to look at all the remedies available to a plaintiff at the time the claim accrued.

5. R.C. 4112.02(N) states: "A person who files a civil action under this division is barred, with respect to the practices complained of, from instituting a civil action under section 4112.14 of the Revised Code and from filing a charge with the commission under section 4112.05 of the Revised Code."

6. R.C. 4112.08 provides: "This chapter shall be construed liberally for the accomplishment of its purposes, and any law inconsistent with any provision of this chapter shall not apply. Nothing contained in this chapter shall be considered to repeal any of the provisions of any law of this state relating to discrimination because of race, color, religion, sex, familial status, disability, national origin, age, or ancestry, except that any person filing a charge under division (B)(1) of section 4112.05 of the Revised Code, with respect to the unlawful discriminatory practices complained of, is barred from instituting a civil action under section 4112.14 or division (N) of section 4112.02 of the Revised Code."

7. R.C. 4112.14(B) states: "The remedies available under this section are coexistent with remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code; except that any person instituting a civil action under this section is, with respect to the practices complained of, thereby barred from instituting a civil action under division (N) of section 4112.02 of the Revised Code or from filing a charge with the Ohio civil rights commission under section 4112.05 of the Revised Code."

{¶ 32} Leininger contends that the short statute of limitations of R.C. 4112.02 (and of R.C. 4112.05, which also has a six-month statute of limitations) detracts from the remedial scheme of R.C. Chapter 4112. The period within which a claim must be brought, however, is a policy decision best left to the General Assembly.

{¶ 33} Based on the above, we hold that the jeopardy element necessary to support a common-law claim is not satisfied, because R.C. Chapter 4112 adequately protects the state's policy against age discrimination in employment through the remedies it offers to aggrieved employees.

## Conclusion

{¶ 34} We therefore hold that a common-law tort claim for wrongful discharge based on Ohio's public policy against age discrimination does not exist, because the remedies in R.C. Chapter 4112 provide complete relief for a statutory claim for age discrimination. The judgment of the Ashland County Court of Appeals is reversed.

*Judgment reversed.*

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

PFEIFER, J., dissents.

---

**PFEIFER, J., dissenting.**

{¶ 35} Marlene Leininger filed a complaint alleging a common-law claim for age discrimination because this court had stated that such a claim was available in *Livingston v. Hillside Rehab. Hosp.* (1997), 79 Ohio St.3d 249, 680 N.E.2d 1220. Granted, the majority's opinion in *Livingston* was brief, but it was clear. It read in its entirety: "The judgment of the court of appeals is reversed, and the cause is remanded to the trial court on the authority of *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 677 N.E.2d 308." The lower court in *Livingston* had held that in regard to an age-discrimination claim, "a plaintiff is * * * precluded from pursuing a common law tort claim in conjunction with a statutory claim already providing the employee with an adequate remedy." *Livingston v. Hillside Rehab. Hosp.* (Jan. 24, 1997), 11th Dist. No. 95–T–5360, 1997 WL 51413, *2. That is the holding that was reversed by this court in *Livingston,* 79 Ohio St.3d 249, 680 N.E.2d 1220. Other courts have rightly interpreted this court's decision in *Livingston* as recognizing a common-law claim for age discrimination in Ohio. *Jones v. Goodyear Tire & Rubber Co.,* Summit App. No. 21724, 2004-Ohio-2821, 2004 WL 1197209, ¶ 22; *Ferraro v. B.F. Goodrich Co.,* 149 Ohio App.3d 301, 2002-Ohio-4398, 777 N.E.2d 282, ¶ 51–52; *White v.*

*Honda of Am. Mfg., Inc.* (S.D.Ohio 2002), 191 F.Supp.2d 933, 954; and *Ziegler v. IBP Hog Market, Inc.* (C.A.6, 2001), 249 F.3d 509, 519, fn. 10.

{¶ 36} Today, this court holds that because former R.C. 4101.17, the statute at issue in *Livingston*, is now R.C. 4112.14, the statutory remedies now available through R.C. 4112.99 are adequate, and so there is no common-law claim for age discrimination. I do not believe that the common law should be inextricably tied to the nuances and vagaries of Ohio's statutory scheme. The common law has its own life.

{¶ 37} When this court recognizes a common-law cause of action for age discrimination, does that not establish the common law? Is our holding in *Livingston* no longer good law because R.C. 4107.17 later became R.C. 4112.14? Will *Livingston* become good law again if the General Assembly makes R.C. 4112.99 remedies unavailable to R.C. 4112.14 plaintiffs? Did the public policy behind a common-law action for age discrimination disappear because the General Assembly shifted the statute into a different statutory chapter?

{¶ 38} As this court held in *Kulch v. Structural Fibers, Inc.,* 78 Ohio St.3d 134, 161, 677 N.E.2d 308:

{¶ 39} "The employment-at-will doctrine was judicially created, and it may be judicially abolished. Clearly, it is the responsibility of the Ohio judiciary to determine whether sufficiently clear public policy reasons exist to support a common-law exception to the doctrine of employment at will * * * and to set the parameters of those exceptions."

{¶ 40} Public-policy exceptions to the employment-at-will doctrine need not be directly tied to specific statutes, but instead can find their *support* in statutory law, as well as in "other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law." *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus. The relevant inquiry is whether there has been an expression of public policy that may support a common-law exception to employment at will; the extent of available statutory remedies is not a primary concern. The role of the common law is not to fill in gaps left by statutory remedies, but to adjust the acceptable breadth of employment at will, a common-law creation. *Kulch,* 78 Ohio St.3d at 155, 677 N.E.2d 308. There is no reason that the statutory tail should wag the common-law dog in this area of the law.

{¶ 41} Concomitantly, the fact that the General Assembly or Congress establishes an exception to employment at will does not mean that a common-law cause of action tracing that statutory right necessarily arises. I created some confusion with my concurrence in judgment only in *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526. I concurred only in judgment due to my belief that a violation of the Family and Medical Leave Act did not rise to the

level of great societal wrongs—such as discrimination based on race, sex, or age—that merit a common-law exception to employment at will. Further, when this court holds that a common-law exception to employment at will exists, that exception should apply to all employment, regardless of the size of the employer. *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 652 N.E.2d 653. I agreed with only the outcome of *Wiles,* and thus the analysis in the lead opinion in *Wiles* is not binding precedent. Accordingly, the statement in *Wiles* at ¶ 15 that "there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests" is of no value to this case or any other.

{¶ 42} In this particular case, a statute offering a clear expression of public policy against age discrimination supported this court's holding in *Livingston.* Ohio still has multiple statutes expressing a societal statement against age discrimination. The fact that statutory law may have caught up with the common law as far as remedies are concerned does not mean that the common-law cause of action recognized by this court in *Livingston* disappears.

---

Michael Terrence Conway & Co., and Michael Terrence Conway, for appellee.

Schottenstein, Zox & Dunn Co., L.P.A., Corey V. Crognale, and Kelly K. Curtis, for appellants.

Denlinger, Rosenthal & Greenberg Co., L.P.A., Daniel G. Rosenthal, Gary L. Greenberg, and Michael P. Majba, urging reversal for amicus curiae Ohio Management Lawyers Association.

Gittes & Schulte, Frederick M. Gittes, and Kathaleen B. Schulte, urging affirmance for amicus curiae AARP.

Gordillo & Gordillo, L.L.C., and Gregory A. Gordillo; Christina M. Royer; and Tate & Renner and Richard R. Renner, urging affirmance for amicus curiae the Ohio Employment Lawyers Association.